# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br><br>SBN FOG CAP II LLC,<br><br>　　　　　Debtor-in-Possession. | ) Case No. 16-13815-TBM<br>)<br>) Chapter 11<br>)<br>)<br>) |
| In re:<br><br>FOG CAP RETAIL INVESTORS LLC,<br><br>　　　　　Debtor. | ) Case No. 16-13817-TBM<br>)<br>) Chapter 11<br>)<br>)<br>) **Jointly Administered Under**<br>) **Case No. 16-13815 TBM**<br>) |

**UNSECURED CREDITORS' COMMITTEE'S MOTION FOR ORDER AUTHORIZING EXAMINATION OF FOG CUTTER CAPITAL GROUP, FORTRESS INVESTMENT GROUP (ALSO KNOWN AS FIG, LLC), SBN FCCG LLC, SUMMITBRIDGE NATIONAL INVESTMENTS, LLC, AND SUMMIT INVESTMENT MANAGEMENT LLC PURSUANT TO FED. R. BANKR. P. 2004**

---

The Unsecured Creditors' Committee for FOG Cap Retail Investors, LLC (the "Committee"), through its undersigned counsel, ONSAGER | GUYERSON | FLETCHER | JOHNSON, LLC, requests an order pursuant to Fed. R. Bankr. P. 2004, authorizing it to conduct discovery as provided below, and in support, states as follows:

## CASE HISTORY

1.　On April 20, 2016, FOG Cap Retail Investors, LLC ("Fog Cap I") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

2.　On April 20, 2016, SBN FOG CAP II, LLC ("Fog Cap II," and collectively with Fog Cap I, the "Debtors") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code.

3.　On May 25, 2016, the United States Trustee formed the Committee pursuant to 11 U.S.C. § 1102 by appointment of Stratford Holding LLC ("Stratford") and Foot Locker Retail, Inc. ("Foot Locker") as its members.

4.　The Debtors' respective cases are being jointly administered pursuant to an Order of the Court dated June 2, 2016 [Docket No. 69].

## THE OKLAHOMA LITIGATION

5. In 2012, Stratford commenced litigation against, *inter alia*, Fog Cap I and Foot Locker in the United States District Court for the Western District of Oklahoma, Case No. CIV-12-0772 (the "Oklahoma Litigation").

6. The Oklahoma Litigation involves claims for environmental damage to certain leased premises (the "Leasehold") owned by Stratford and initially leased to Foot Locker which Foot Locker transferred to Fog Cap I in October 2002.

7. In or about April 2014, Fog Cap I purported to transfer the Leasehold to Fog Cap II, but the Committee, as well as Stratford and Foot Locker in their non-Committee member capacities, fully reserve all rights to challenge the propriety of such transaction and the ownership of the Leasehold (as well as all other leaseholds purportedly conveyed by Fog Cap I to Fog Cap II).

## THE TRANSFERS AND ESTATE CLAIMS

8. The Debtors' statements of financial affairs ("Debtors' SOFAs") indicate that they made certain payments to insiders and affiliates within applicable avoidance periods. In particular, the Committee has identified at least $518,591.60 in transfers to SBN FCCG LLC ("SBN") and Summit Investment Management LLC ("Summit") that may be avoidable, including a $325,000 transfer from Fog Cap I to SBN described as a "return of capital."

9. SBN is the sole member of Fog Cap I, which, in turn, is the sole member of Fog Cap II. On information and belief, Summit is an affiliate of or otherwise related to SBN, Fog Cap I and Fog Cap II and has managed the business and financial affairs of both Fog Cap I and Fog Cap II. In such regard, Steve Petrie, the Chief Operating Officer of Summit, is the Chief Executive Officer of each of Fog Cap I and Fog Cap II, and Mackenzie Kazmark, an employee of Summit, was responsible for the day-to-day accounting and management needs of both Fog Cap I and Fog Cap II until the termination of her employment on or about August 1, 2016. On information and belief, neither Fog Cap I nor Fog Cap II have any direct employees other than Mr. Petrie.

10. Although it is the Committee's understanding that Summit and its personnel manage the affairs of the Debtors, Debtors' SOFAs identify transfers of money for "management fees" to SBN. It is unclear what, if any, services SBN provides to the Debtors for which it should be compensated.

11. The Debtors monthly operating reports ("MORs") for May and June 2016 contain similar entries reflecting management fees paid to SBN by Fog Cap I and Fog Cap II in the amounts of $10,000 and $3,340 per month, respectively. The Committee has objected to the payment of these management fees and asked the Debtors to provide a copy of the management contract, if any, and to justify the amount of the fees being paid. Upon information and belief, no written contract exists, and the payments continue to be made. The Committee desires to explore the propriety of these management fees and payments made by the Debtors to SBN, Summit, and other related entities.

12. The Committee recognizes that there may be legitimate expenses incurred in the operation and management of the Leaseholds which could justify a management fee payable to a third party (the Committee understands the Debtors have no employees other than Mr. Petrie). The Committee has requested information from the Debtors about the expenses presumably being incurred which might justify payment of management fees. Although the management fees appear excessive, and otherwise may be inappropriate, based on the facts and circumstances here, some fee may be appropriate. However, the Committee cannot properly evaluate the fees paid without the information it has requested and which Debtors have not provided. *See* **Exhibit A** attached hereto (emails from the Committee's counsel to Debtors' counsel and Debtors' counsel's response thereto).[1]

13. In addition to the transfers identified in the Debtors' SOFAs and the payment of post-petition management fees to SBN, the Committee believes that the Debtors' estates have claims against Summit, SummitBridge National Investments, LLC ("SummitBridge", which, upon information and belief, is the sole member of SBN), SBN, Fog Cutter Capital Group ("Fog Cutter"), and/or Fortress Investment Group (also known as FIG, LLC) ("Fortress")—all of which are insiders and/or affiliates of the Debtors—for environmental liabilities alleged to be owed in the Oklahoma Litigation. With respect to the Oklahoma Litigation environmental liabilities, which constitute the bulk of the debt owed by the Debtors, some or all of the foregoing entities may have liability on various theories including alter ego, control person or successor liability.

14. Accordingly, the Committee asserts that the Debtors have (and upon further discovery and investigation may have other) claims pursuant to 11 U.S.C. §§ 541, 544, 545, 547, 548, 549, 550, and 551 against Summit, SBN, Fog Cutter, SummitBridge, and/or Fortress. These causes of action should be investigated and, if warranted, prosecuted on behalf of the estate in order to maximize recovery for unsecured creditors.

## CAUSE FOR THE PRODUCTION OF DOCUMENTS AND EXAMINATION

15. The request for the Debtors to investigate, and as necessary, proceed with litigation of the matters described herein was first raised by letter dated May 27, 2016 (the "Letter"), which was sent after the Committee had been appointed but before it formally was "up and running." *See* **Exhibit B** attached hereto. In the Letter, Stratford asked whether Debtors had done any investigation and/or analysis with respect to the questionable, insider transfers identified in Debtors' SOFAs and also demanded that Debtors take appropriate action to pursue the $325,000 "return of capital" transfer to SBN. On that day, the Debtors advised they would respond the following week which, in light of the upcoming Memorial Day weekend, was reasonable and acceptable to Stratford. But Debtors did not respond the following week. Stratford followed up by email on June 6th. *See* **Exhibit C** attached hereto. The Debtors never responded.

16. The failure of the Debtors and Debtors' counsel to proceed with the investigation and litigation of these claims, despite multiple requests to do so, is not surprising since the Debtors

---

[1] Simultaneously with the filing of this motion, the Committee is filing request for Rule 2004 discovery from Summit, SummitBridge, SBN, Fog Cutter and Fortress.

and their counsel are conflicted. Counsel for the Debtors has properly acknowledged that because of its representation of Summit, it is unable to pursue any investigation or litigation against Summit or SummitBridge. Summit and SummitBridge are listed as principal clients on the firm's website and Summit was identified as a client of the firm in its retention application. Debtors' counsel also disclosed that a portion of the law firm's revenues for the past few years was derived from that representation.

17. An organizational chart provided by the Debtors shows the upstream ownership of the Debtors up to the level of SummitBridge. *See* **Exhibit D** attached hereto. The Debtors have failed to provide any information as to the ownership structure above the level of SummitBridge.[2]

18. As a result of the Debtors' conflicts and failure to timely act, the Committee has filed simultaneously herewith its Motion for Entry of Order Authorizing the Committee to Bring Avoidance and Other Actions on Behalf of the Estate [Docket No. 158] which seeks entry of an Order authorizing it to investigate potential avoidance and other actions against Summit, SummitBridge, SBN, Fog Cutter, and/or Fortress, and, if appropriate, to initiate litigation against those entities on behalf of the jointly administered estates.

19. The Committee desires to obtain discovery from the Debtors' insiders, affiliates and others as identified herein and related to the matters identified above and any other matters affecting the administration of the Debtors' estates, including but not limited to the documents and communications listed on **Exhibit F** attached hereto. The discovery may include but not be limited to the taking of depositions, serving interrogatories, and requesting the production of documents from SBN, Summit, SummitBridge, Fortress and Fog Cutter.

20. Under Fed. R. Bankr. P. 2004(b), the Court may order the examination of any entity regarding the acts, conduct, or property, or to the liabilities and financial condition of Debtors or to any matter which may affect the administration of the estates. The documents and information the Committee seeks relate directly to assets and liabilities of the estate and transfers from Debtors, as well as potential claims of the Debtors and their estates. The documents and information are necessary to enable the Committee to perform its duties as required by 11 U.S.C. § 1103(c).

21. Entities served with a subpoena under Fed. R. Bankr. P. 9016 and Fed. R. Civ. P. 45 may request that the Committee pay reasonable costs and expenses in complying with a subpoena. The Committee will also be required to pay witness and mileage fees to any deponent. The Committee requests authority to pay such reasonable costs and expenses and witness and mileage fees.

**WHEREFORE**, the Committee requests that the Court enter an Order authorizing it to obtain documents, serve subpoenas, and conduct examinations of the entities described above, including Summit, SummitBridge, SBN, Fog Cutter, and Fortress, authorizing the Committee to

---

[2] Steve Petrie, the COO of Summit, and the CEO of both of the Debtors, is one of Summit's two members. There is another member of Summit, but Debtors' counsel instructed Mr. Petrie not to disclose the identity of such other member during Mr. Petrie's deposition taken in these cases on June 20, 2016. *See* **Exhibit E** at 7:12-8:1 (excerpts of deposition of Mr. Petrie taken on June 20, 2016). Mr. Petrie also was instructed not to answer questions about the ownership of SummitBridge. *See* **Exhibit E** at 11:20-12:17, 75:25-76:5, 89:11-21.

reimburse the reasonable costs and expenses of complying with subpoenas and witness and mileage fees to deponents, and grant any additional relief as the Court deems proper.

Dated: August 11, 2016  Respectfully submitted,

**ONSAGER | GUYERSON | FLETCHER | JOHNSON**

  *s/ Michael J. Guyerson*
  Michael J. Guyerson, #11279
  Gabrielle G. Palmer, #48948
1801 Broadway, Suite 900
Denver, Colorado 80202
Ph: (720) 457-7061
Fax: (303) 512-1129
mguyerson@OGFJ-law.com
gpalmer@OGFJ-law.com

*Counsel for the Unsecured Creditors'
Committee of FOG Cap Retail Investors, LLC*

## CERTIFICATE OF SERVICE

      I certify that on August 11, 2016, I served a copy of this **UNSECURED CREDITORS' COMMITTEE'S MOTION FOR ORDER AUTHORIZING EXAMINATION OF FOG CUTTER CAPITAL GROUP, FORTRESS INVESTMENT GROUP (ALSO KNOWN AS FIG, LLC), SBN FCCG LLC, SUMMITBRIDGE NATIONAL INVESTMENTS, LLC, AND SUMMIT INVESTMENT MANAGEMENT LLC PURSUANT TO FED. R. BANKR. P. 2004,** by placing it in the United States mail, postage prepaid, to the following;

| | | |
|---|---|---|
| Donald D. Allen<br>James T. Markus<br>Matthew T. Faga<br>1700 Lincoln St., Ste. 4550<br>Denver, CO 80203 | John D Demmy<br>919 N. Market St., Ste. 1300<br>Wilmington, DE 19801-3092 | Cristina B. McGarr<br>250 Arapahoe Ave., Ste. 301<br>Boulder, CO 80302-5838 |
| Daniel J. Morse<br>308 W. 21st St., Ste. 203<br>Cheyenne, WY 82001-3669 | Christopher L. Richardson<br>1550 17th St., Ste. 500<br>Denver, CO 80202-1500 | Risa Lynn Wolf-Smith<br>555 17th St., Ste. 3200<br>Denver, CO 80202-3921 |
| Shannon P. Wheeler<br>15 E. Fifth Street, Suite 3700<br>Tulsa, Oklahoma 74103 | Ryan Craig<br>1825 Eye Street NW<br>Washington, D.C. 20006 | |

Dated: August 11, 2016                                            *s/ Barbara A. Moss*